**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| USIRIDAZH R. MACHSHONBA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>  Commissioner of Social Security, )<br>)<br>Defendant. ) | CASE NO.   1:09-cv-1166<br><br>JUDGE NUGENT<br><br>MAGISTRATE JUDGE VECCHIARELLI<br><br>**REPORT AND RECOMMENDATION** |

This case is before the magistrate judge on referral.  Plaintiff, Usiridazh R. Machshonba ("Machshonba"), challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying Machshonba's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

I. Procedural History

Machshonba applied for SSI on April 3, 2005.  His  application was denied initially and upon reconsideration.  Machshonba timely requested an administrative hearing.

Administrative Law Judge Richard J. Boyle ("ALJ Boyle") held a hearing on June 26, 2008.  Machshonba, represented by counsel, testified on his own behalf at the hearing.

Kathleen O'Brien testified as a medical expert ("ME").  ALJ Boyle issued a decision on July 24, 2008 in which he determined that Machshonba was not disabled.  Machshonba requested a review of ALJ Boyle's decision by the Appeals Council.  On March 25, 2009, ALJ Boyle's decision became the decision of the Commissioner when the Appeals Council affirmed the decision of the ALJ and declined further review.

Machshonba filed an appeal to this court on May 21, 2009.  Machshonba alleges that ALJ Boyle erred because his determination that Machshonba does not have a servere impairment or combination of impairments is not supported by substantial evidence.  The Commissioner denies that the ALJ erred.

II.  Evidence

*A.    Personal and Vocational Evidence*

Machshonba was born on January 5, 1951 and was 57 years old at the time of the ALJ's decision.  He has a high school degree and an associate's degree in business administration.  He also had additional training in printing and graphics.  Machshonba was incarcerated for 30 years and worked as a groundskeeper, kitchen helper, librarian, and porter while in prison.  Upon release, he worked as a general laborer and as a telephone marketer.

*B.    Medical Evidence*

Consultative examiner Naomi Waldbaum, M.D., examined Machshonba on October 22, 2002 in connection with a previous application for benefits.  Transcript ("Tr."), pp. 358-60. Machshonba (then known as Frederick Lewis) complained of pain and stiffness in his lower back.  He attributed the problem to being struck in the back of the neck and later falling while in prison, and reported that the problem had originally been accompanied by

2

numbness in his right hand. Machshonba reported that he was able to drive, was able to groom himself, and was able to take care of personal hygiene. Dr. Waldbaum observed that he was nervous and anxious, and Machshonba admitted that he had problems with depression and paranoia and disliked crowds and leaving his home. Machshonba attributed these feelings to his time in prison. Dr. Waldbaum's examination revealed 40° of flexion in the lumbar spine and only 10° of extention. Right lateral flexion was more limited than left lateral flexion. His gait was antalgic, and he could walk a few steps on toes or heels and initiate a partial squat. Machshonba reported a pulling sensation upon lumbar flexion and upon straight left leg raising. He also reported discomfort upon palpation of the lumbosacral angle area and his blood pressure was somewhat high Otherwise, the examination was normal. Dr. Waldbaum recommended psychological evaluation.

Sally Felker, Ph.D., a psychologist, examined Machshonba on November 5, 2002. Tr. at 365-70. She found Machshonba's appearance, conversation, and thought to be normal, although she noted unresolved feelings regarding his incarceration. He reported that he was somewhat depressed and anxious and stated that coming back to live with his family was stressful, as he was having trouble adjusting to the change in surroundings. He reported back problems and pain and difficulty in sleeping. Dr. Felker found reduced interest in his surroundings. Machshonba reported no delusions or hallucinations, and Dr. Felker found no evidence of paranoid or grandiose thinking or markedly unusual thought themes. Machshonba was oriented X3 and had fair insight and judgment. His daily activities were fairly normal, except that he reported that he did not socialize beyond his family. The Wechsler Adult Intelligence Scale-III revealed a verbal IQ of 98, a performance

IQ of 76 for an overall IQ of 88, within the average range of adult functioning, although his performance IQ was at the borderline level, His score on the Wide Range Achievement Test-3, Reading Recognition placed him in the post-high school equivalent (73rd percentile). The results of the Wechsler Memory Scale-III were low average to borderline, with limitations in immediate memory and visual delayed memory. Dr. Felker diagnosed Machshonba as suffering from depression of unspecified type and a mixed personality disorder and found mild restrictions in his ability to concentrate and attend to tasks, mild limitations in his capacity for carrying out tasks, moderate impairment in his ability to relate to others and deal with the general public, mild to moderate impairment in his ability to relate to work peers and supervisors and tolerate work-related stress. She assigned him a Global Assessment of Functioning ("GAF") of 55.[1]

John Hughes, M.D., a state consulting physician, completed a Physical Residual Functional Capacity Assessment of Machshonba on November 7, 2002. Tr. at 372-77. He found that Machshonba could lift or carry 50 pounds occasionally and 25 pounds frequently, could stand or walk about six hours in an eight-hour day, sit about six hours in an eight-hour day, and was unlimited in his ability to push and pull. Dr. Hughes based these limitations on Machshonba's allegations of low back pain. He found no postural, manipulative, visual, communicative, or environmental limitations.

Alice Chamblys, Psy.D., a state agency consulting psychiatrist, completed a Psychiatric Review Technique assessing Machshonba on November 13, 2002. Tr. at 378-93. Dr. Chamblys found that Machshonba suffered from a depressive disorder and a mixed

---

[1] A GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

4

personality disorder with anti-social features. She opined that Mahcshonba had mild restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; and mild difficulties in maintaining concentration persistence, and pace. She also opined that he was moderately limited in his ability to work in coordination with or proximity to others without being distracted by them, moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods, and moderately limited in his ability to interact appropriately with the general public. Dr. Chamblys concluded:

> the clt is able to understand, remember and carry out instruction. The clt is able to make simple work related decisions. Clt is able to carry out tasks that do not require prioritization or more than daily planning. The clt is able to interact occasionally in situations that do not require resolving conflicts or persuading others to follow demands.
>
> Clt's statements regarding limitations are found to be partially consistent, therefore partially credible.

Tr. at 393.

Machshonda underwent psychological testing by Stephen A. Kushnick, Ph.D., a licensed psychologist, on November 3, 2004. Tr. at 465-70. After administering the Wechlser Adult Intelligence Scale, the Wide Range Arithmetic Achievement Test, the Crawford Small Parts Test, the Oral Directions Test, the Bender-Gestalt Visual Motor Test, the Gates reading Comprehension Test, the Minnesota Paper Form Board, the EAS Clerical Test, the Geist Picture Interest Inventory, the Rotter Incomplete Sentence Blank, and the Minnesaota Multiphasic Personality Inventory, Dr. Kushnick concluded that Machshonba suffered from an anti-social personality disorder and possibly depression. He

also opined that Machshonba had an average intellectual capability but achieved meager results on most vocational tests.  Dr. Kushnick was unsure the extent to which these results were a product of a passive-aggressive orientation or other causes, but he nevertheless believed that Machshonba's capabilities were substantially above his test scores. Dr. Kushnick also noted problems with short-term memory, although he discounted an organic cause for this or for other psychological problems.  Finally, Dr. Kushnick concluded that evaluation and possible treatment for depression and a more complete assessment of Machshonba should be undertaken.

On November 18, 2004, Machshonba appeared at the Mental Health Intake of the Free Clinic of Greater Cleveland. Tr. at 401-05. He alleged, *inter alia*, severe depression, lack of appetite, sleeplessness, fatigue, repetitive behaviors, inability to concentrate, mood swings, agitation, emotionalism, irritability, fearfulness, guilt, paranoia, food restrictions, worry, weight change, repetitive thoughts, grief, hopelessness, social isolation, thoughts of worthlessness, emotional abuse, physical abuse, agoraphobia, and hallucinations and moderate difficulty controlling anger and feelings of wanting to hurt people. He was placed on the clinic's waiting list.

Dr. Felker examined Machshonba a second time on May 18, 2005.  Tr. at 394-97. Machshonba reported that he had tried to work recently at Community House but that "he couldn't keep up with the work responsibilities" and quit after three days.  Tr. at 394. Machshonba also reported recently-torn ligaments in his arm and arthritis, in addition to his previous head injury, back injury, and depression.  He asserted that he cannot stand for long periods, has episodic fainting spells, and has trouble sleeping.  Dr. Felker also observed indications of depression, intermittent anxiety, diminished energy, and reduced

6

interest in his surroundings. Machshonba was oriented X3, unable to subtract serial sevens but able to subtract serial threes, displayed marginal insight and judgment, and gave the impression that he was having problems managing his affairs. Dr. Felker summarized Machshonba's daily activities as follows:

> Usiridazh [Machshonba] said that he usually gets up around noon. He will then wash, get dressed and turn on the television. He said that he is usually not hungry when he gets up but later his mother will prepare something for him to eat. He does do household chores like taking out the chores [sic] but spends most of his time watching television. On pleasant days he might sit in the backyard. In the evening his mother prepares dinner and after he watches television. Usiridazh has no particular time at which he retires. He doesn't socialize. He has no idea how to approach community living after his lengthy incarceration. He doesn't do much reading and used to read while in prison but had [sic] vision problems now and oannot concentrate very well. He continues to make efforts so [sic] secure employment but feels very demoralized by the process since he realizes that his felony conviction and lengthy incarceration would rule him out of most employment situations.

Tr. at 396. Dr. Felker opined that Machshonba had mild to moderate impairment in his ability to concentrate, moderate impairment in his ability to relate to others, and moderate restriction in his ability to relate to work peers and supervisors and tolerate work stressors. Dr. Felker assigned him a GAF of 53.

On September 23, 2005, Frank J. Orosz, Ph.D., a state agency psychologist, reviewed Machshonba's records and completed a Psychiatric Review Technique assessing Machshonba's level of functioning. Tr. 414-27. Dr. Orosz indicated that there was insufficient evidence in the record to make an assessment at that time.

On June 23, 2005, John Waddell, a medical consultant,[2] reviewed Machshonba's records and completed a Psychiatric Review Technique assessing Machshonba's level of

---

[2] Waddell's area of expertise is not specified in the record.

functioning.  Tr. 428-43.  Waddell found that Machshonba suffered from a dysthymic disorder that produced mild restrictions of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, and pace.  He also opined that Machshonba was moderately limited in his ability to maintain attention and concentration for extended periods, moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods, and moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors.  Waddell concluded:

> Sustained concentration is reduced, but claimant is able to complete tasks that do not require a rapid or consistent pace.  He is able to engage appropriately in simple social interactions and retains the ability to perform simple, routine, low-stress tasks.  He would do best in a situation which does not require direct interaction with the general public.

Tr. at 442.

Machshonba appeared at the MetroHealth Medical Center on October 10, 2005, complaining of back pain.  Tr. at 446-53.  Machshonda reported that the pain was worse when lifting and working and better with rest.  He also reported depression and having lost 35 pounds in the past year.  An examination revealed slight dextroscoliosis and tenderness at the lumbosacral junction, but was otherwise normal.  The attending physician diagnosed Machshonda as most likely suffering from lumbosacral spondylosis and prescribed physical therapy and Naproxen.  He appeared again at MetroHealth on November 28, 2005 complaining of intermittent back pain rating a 7 on a 10-point scale, accompanied by burning, tightness, and aching.  He also reported that the pain worsened with sitting a long time, walking a long distance, stepping up, lifting, and bending.  He also reported having

8

lost 10 pounds in the last seven weeks. Flexion was decreased by 50% due to pain, and range of motion, flexibility, and strength were all below normal. The attending physician recommended postural instruction and physical therapy to build strength. Machshonda participated in physical therapy in November and December 2005.

*C.     Hearing testimony*

At the hearing on June 26, 2008, Machshonba testified that he had problems with his right shoulder that were aggravated by lifting, had intermittent back problems, and did not socialize outside of his family. He stated that he had walked about 1½ hours to get to the hearing and that walking to the hearing had bothered his back. He also testified that he swept, dusted, and cooked and occasionally did laundry, but that he was limited to about two hours of standing at a time. He had no trouble with sitting, however. Machshonba described several jobs he obtained but from which he had been dismissed as "not working out."

The ME testified that Machshonba had never been treated for a mental health condition and had been evaluated as being "fairly bright." The ME opined that the record showed Machshonba was capable of unskilled work and that, although he had depressive symptoms and some anxiety, he had not received treatment for these conditions. The ME denied that Machshonba had a severe medical impairment. She opined that although he had been diagnosed with depression, he had never seriously sought treatment for that condition, leading to her conclusion that the condition was not severe. The ME also discounted the opinions of examining sources to the extent that their evaluations of Machshonba were based entirely on self-reports.

9

III. Standard for Disability

A claimant is entitled to receive benefits under the Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent him from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). At the fifth step, the burden is on the

10

Commissioner to demonstrate "that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors." 20 CFR § 404.1560(c)(2).

### IV. Summary of Commissioner's Decision

In relevant part, ALJ Boyle made the following findings:

1. The claimant did not engage in substantial gainful activity since April 5, 2005, the application date . . . .

2. The claimant has the following medically determinable impairments: depression, anti-social personality disorder . . . and low back pain . . . .

3. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments. . . .

4. The claimant is not credible . . . .

5. The medical evidence of record does not sustain the claimant's burden of showing disability as the regulations require (i.e., burden of proof) . . . .

6. The claimant has not been under a disability, as defined in the Social Security Act, since April 5, 2005 . . . , the date the application was filed.

Tr. at 15-17.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d

11

1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

VI. Analysis

Machshonba argues that ALJ Boyle erred because his determination that Machshonba does not have a severe impairment or combination of impairments is not supported by substantial evidence. The Commissioner denies that the ALJ erred.

As Machshonba rightly observes, the standard for determining whether a claimant has a "severe impairment" at the second stage of the five-step disability determination is not onerous:

> In this circuit, the claimant's burden of proof at step two "has been construed as a *de minimis* hurdle in the disability determination process . . . [A]n impairment can be considered *not* severe only if it is a slight abnormality that *minimally* affects work ability regardless of age, education, and experience." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (emphasis added) (citing *Farris v. Sec'y of Health and Human Serv.,* 773 F.2d 85, 89-90 (6th Cir. 1985)). *See also Bowen v. Yuckert,* 482 U.S. 137, 158-59, 107 S. Ct. 2287, 96 L.Ed.2d 119 (1987) ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking this vocational analysis.") (O'Connor, J., concurring). Furthermore, step-two severity review is used primarily to "screen out totally groundless claims." *Farris,* 773 F.2d at 89.

*Germany-Johnson v. Commissioner of Social Security*, 313 Fed. Appx. 771, 775 (Nov. 5, 2006 6th Cir.). As the Commissioner stated in 1985,

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at [the second] step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's

> impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

Basic work activities include "understanding, carrying out, and remembering simple instructions; . . . use of judgment; . . . responding appropriately to supervision, co-workers and usual work situations; and . . . dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(3)-(6).

In the instant case, the entirety of the ALJ's summary and analysis of the record was as follows:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment of combination of impairments for the reasons explained below.
>
> Regarding the claimant's back, treatment records only reflect subjective complaints, and allegations of injury in prison is [sic] not shown in the prison records. Moreover, he walked 1½ miles to get to the hearing.
>
> The ME testified that the medical evidence of record did not establish any mental impairment; e.g. no testing. The ME noted that the report from psychologist S. Felker, Ph.D. who only described the claimant's reported symptoms and diagnosed without testing, something a psychologist should never do. The ME also discounted the Global Assessment of Functioning or "GAF" score of 53 since the GAF includes non-disability factors such as an economic condition.
>
> I agree with the ME.

Tr. 16-17 (citations and footnote omitted).

The ALJ's summary and analysis consists of a string of erroneous assertions about the record and reliance upon an ME's opinion which, itself, rested upon an erroneous statement of the record. First, the record does not reflect only subjective complaints

13

regarding Machshonba's back. Dr. Waldbaum's examination on October 22, 2002 revealed 40° of flexion in the lumbar spine and only 10° of extension, with right lateral flexion more limited than left lateral flexion, and tenderness upon palpation in the lumbosacral angle area. The examination of Machshonba at the MetroHealth Medical Center on October 10, 2005 and November 28, 2005 included findings of tenderness upon palpation, range of motion tests indicating reduced flexion, and strength tests indicating substantial decreases in strength. Second, Machshonba did not say that he walked 1½ miles to get to the hearing: He said that he had walked 1½ *hours* to get there. Moreover, as Machshonba also testified that he could stand for two hours at a time while working and that walking to the hearing had bothered his back, the ALJ fails to articulate how walking to the hearing undercut Machshonba's credibility. Third, despite the ALJ's and ME's assertions to the contrary, the record contains a multitude of tests regarding Machshonba's alleged mental impairments, including tests by Dr. Felker. On November 5, 2002, Dr. Felker administered the Wechsler Adult Intelligence Scale-III, the Wide Range Achievement Test-3, and the Wechsler Memory Scale-III, from which, in conjunction with a clinical interview, Dr. Felker concluded that Machshonba suffered from depression of unspecified type and a mixed personality disorder and had mild restrictions in his ability to concentrate and attend to tasks, mild limitations in his capacity for carrying out tasks, moderate impairment in his ability to relate to others and deal with the general public, mild to moderate impairment in his ability to relate to work peers and supervisors and tolerate work-related stress. On November 3, 2004, Dr. Kushnick administered the Wechlser Adult Intelligence Scale, the Wide Range Arithmetic Achievement Test, the Crawford Small Parts Test, the Oral Directions Test, the Bender-Gestalt Visual Motor Test, the Gates reading Comprehension

Test, the Minnesota Paper Form Board, the EAS Clerical Test, the Geist Picture Interest Inventory, the Rotter Incomplete Sentence Blank, and the Minnesaota Multiphasic Personality Inventory. As had Dr. Felker, Dr. Kushnick concluded that Machshonba suffered from an anti-social personality disorder and possibly depression. He noted that Machshonba had an average intellectual capability but achieved meager results on most vocational tests, although he believed that in any case Machshonba's capabilities were substantially above his test scores. He did, however, note problems with short-term memory.

In sum, the ALJ's brief summary and analysis are entirely perfunctory and contain factual errors. Moreover, Dr. Felker's November 2, 2002 assessment of Machshonba's limitations, based upon tests she administered, substantially exceeds the minimal limitations required by the Sixth Circuit and the Commissioner for a finding that Machshonba suffers from at least one severe impairment.

For all these reasons, the ALJ's findings regarding Machshonba's credibility and his finding that Machshonba does not suffer from a severe impairment are not supported by substantial evidence. As findings regarding credibility are solely within the province of the Commissioner, this case must be remanded to the ALJ for a thorough and accurate assessment of both the record and Machshonba's credibility. The ALJ must also revise his analysis at the second stage of the five stage process based upon an accurate statement of the record. Moreover, as Machshonba suffers from one or more severe impairments, the ALJ will have to extend his analysis to at least stage three of the five-stage process.

## VII. Decision

For the reasons given above, the decision of the Commissioner should be

15

REVERSED and the case REMANDED for further proceedings.


Date: May 20, 2009					s/ Nancy A. Vecchiarelli
							U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.